PEOPLE, PLAINTIFF AND APPELLEE, *v.* BRACERO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in a Prosecution for the Violation of Section 287 of the Penal Code.

No. 1332.—Decided March 7, 1919.

CRIME AGAINST PUBLIC DECENCY—HOUSE OF ILL FAME.—An information that fails to allege that the house of ill fame kept by the accused is resorted to for

the purposes of prostitution or lewdness is fatally defective because it does not fully charge the criminal act defined in section 287 of the Penal Code.

ID.—ID.—INFORMATION.—Section 287 of the Penal Code contemplates, two methods of committing the crime which it penalizes: (1) keeping a house of ill fame which is resorted to for the purpose of prostitution or lewdness, and (2) wilfully residing in such house. It was held after an examination of the information that it did not charge said crime in either aspect.

ID.—ID.—CONSTRUCTION OF LAW.—In order that a house may be considered a house of ill fame, it must be resorted to more than once for purposes of prostitution and lewdness by others than the proprietor, but it is not necessary that it be used habitually or for a considerable length of time for such purpose. Numerous illicit acts committed with the proprietor do not of themselves convert the house into a house of ill fame.

The facts are stated in the opinion.

Mr. Angel A. Vázquez for the appellant.

Mr. S. Mestre, Fiscal, for the respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Josefa Bracero was charged with violating section 287 of the Penal Code in the following manner: At Mayagüez, in the months of July and August, 1918, the accused "unlawfully, maliciously and wilfully kept a house of ill fame where she personally practiced or engaged in carnal acts of prostitution."

On arraignment in the district court the defendant by her attorney demurred on the ground that the facts stated in the complaint did not charge a penal offense.

The court heard the oral arguments of counsel for both parties and overruled the demurrer. The case then went to trial and after examining the evidence the court found the defendant guilty under section 287 of the Penal Code and sentenced her to imprisonment for one year in jail. The defendant appealed and was admitted to bail.

The evidence examined at the trial does not appear in the transcript sent up to this court; therefore we have only to consider and decide whether the acts imputed to Josefa Bracero constitute the crime defined in section 287 of the Penal Code. That section reads as follows:

"Art. 287.—Toda persona que estableciere o tuviere establecida en

*Puerto Rico una casa de lenocinio, frecuentada para la prostitución y lascivia, o que voluntariamente residiere en ella, será reo de misdemeanor.''*

The English text reads:

"Sec. 287.—Every person who keeps a house of ill fame in Porto Rico, resorted to for the purpose of prostitution, or lewdness, or who wilfully resides in such house, is guilty of a misdemeanor."

Therefore, under the statute, the crime defined by section 287 may be committed in two ways, namely: (1) By keeping a house of ill fame, resorted to for the purpose of prostitution and lewdness, and (2) by wilfully residing in such house.

With which of the two is the defendant charged? The information charges directly that "she kept a house of ill fame." But the defendant contends that this is not sufficient and that the information should charge that the said house was "resorted to for the purpose of prostitution or lewdness."

What effect can be given to the concluding words of the complaint, that is, "where she personally practiced or engaged in carnal acts of prostitution and lewdness?" Do these words charge the defendant with the commission of the crime in its second phase, namely, with wilfully residing in a house of ill fame, resorted to for the purpose of prostitution or lewdness, or can they be held to supply the omission of the words of the statute, "resorted to for the purpose of prostitution or lewdness?"

In order to dispose of these questions let us examine the jurisprudence applicable.

"A house of ill fame is defined to be 'a house kept for the convenience and shelter of persons desiring unlawful sexual intercourse, and in which such intercourse is practiced.' *United States* v. *Snow,* 9 Pac. 501, 510, 4 Utah, 280; *Posnett* v. *Marble,* 20 Atl. 813, 62 Vt. 481, 11 L. R. A. 162, 22 Am. St. Rep. 126.

"A house of ill fame is a nuisance at common law, for it holds out allurements to a miscellaneous and common bawdry, corrupting to the public morals. The words 'ill fame' are used to give name and character to the house, and do not refer to its reputation. Both at common law and in common parlance the words 'house of ill fame' mean a house resorted to for the purpose of prostitution. *State* v. *Plant*, 32 Atl. 237, 67 Vt. 454, 48 Am. St. Rep. 821." 4 Words and Phrases Judicially Defined, 3359.

In his Law Dictionary Escriche defines "public house" as "a house of prostitutes," and refers to "brothel" which means "a public resort of fast women which formerly existed in many cities," and then defines pimping as follows:

"The infamous traffic in the prostitution of women. Law I, Title XXII, *Partida* 7, divides the persons who engage in this traffic into five classes: (1) The knaves who keep public prostitutes in a brothel and receive a part of their earnings; (2) those who, like hawkers, procurors or go-betweens, solicit women at their own homes for men who reward them for their depravity; (3) those who keep servant girls in their houses and make prostitutes of them for purposes of receiving their earnings; (4) despicable married men who act as pimps for their wives; (5) those who for money receive women or others of good standing at their houses for the purposes of fornication, without being either go-betweens or accomplices. All these persons are called panderers, pimps or procurers. They may be accused by any one and upon conviction are subject to the following punishments: The pimps of the first class shall be banished from the town together with the strumpets kept by them. Those of the second class shall forfeit their houses to the State and pay ten pounds of gold. One of the third class shall marry and give the woman a dower or suffer death. Those of the fourth and fifth classes are liable to the same punishment, it being understood that the foregoing provisions apply equally to female pimps. Law II, Title XXII, *Partida* 7.

"The laws of the *Novísima Recopilación*, without classifying pimps, impose upon those arrested for the first time and not under seventeen years of age the penalty of public degradation and ten years' imprisonment; for the second offense, one hundred lashes and imprisonment for life; for the third offense, death by hanging with forfeiture of the weapons and clothes which they wore at the time of their arrest to the judge and prosecutor in equal parts. Any

person, on his own authority, may arrest pimps wherever they may be found and surrender them immediately to the authorities, it being understood that military men shall be cashiered for pandering and if found guilty by the military court the criminals and the records shall be delivered to the civil authorities.'' Laws 1, 2, 4 and 5, Title XXVII; Law 2, Title XIV, Book Twelfth, *Novísima Recopilación.*

"But neither the penalties imposed by the *Partidas* nor by the *Recopilación* are now enforced, and, as a general rule, capital punishment is commuted by the courts to punishment by whipping, by being tarred and feathered, or by being made to wear a foolscap painted with various figures explanatory of the offense, and by confining male offenders in the penitentiary and female offenders in the house of correction. Husbands who consented to the prostitution of their wives were tarred and feathered and a pair of sheep's horns were suspended from their necks, and they were then sent to the penitentiary. But some of these punishments having fallen into disuse, only banishment and imprisonment in the penitentiary or house of correction could be enforced. *See* Brothel, Pimp, Streetwalker, and Prostitution.

"The crime of pimping is now punished as provided for in the Penal Code under the article entitled 'Corruption of Minors.'"

At first sight it would appear that the meaning of "house of ill fame" is so well known both in Spanish and in English, that the words "resorted to for the purpose of prostitution, or lewdness," were unnecessary. However, the legislators employed them and that shows their plain intention to define the offense which they regarded as criminal. The keeping of a house of ill fame is not sufficient; it must be resorted to for the purpose of prostitution or lewdness. Such being the case, we are of the opinion that the district court should have sustained the defendant's demurrer. An information which fails to allege that the house of ill fame kept by a defendant is resorted to for the purpose of prostitution or lewdness is fatally defective because it does not charge the defendant with the criminal offense in its entirety. The fact that the information alleged that the defendant

personally practiced or engaged in carnal acts of prostitution or lewdness at the house kept by her is not sufficient. It does not charge the commission of the offense in its second phase, that is, wilful residence, in a house of ill fame resorted to for the purpose of prostitution or lewdness, generally the lot of those unfortunate women who have lost all shame and lack the will to take a worthy part in life's struggles and who are not only the actual instruments used for purposes of carnal intercourse, but the means by which the traffic for such purpose is carried on by men and women more infamuos even than they. Moreover, even if it could be held that wilful residence was alleged by implication, we should still be confronted by the fact that the house of ill fame referred to in the information is not described according to the statute.

Neither can it be held that the concluding words complement the preceding words in such a manner as to charge the defendant with the commission of the crime in its first phase, for it has been held that ''to constitute the place a house of ill fame, it must be resorted to more than once for the purpose of prostitution and lewdness by others than the proprietor, though it need not be used habitually or for any considerable length of time for such purpose. It has been held that any number of illicit acts with the proprietor will not make the place a house of ill fame.'' 9 R. C. L. 219, and cases cited.

In view of the foregoing, the judgment appealed from should be reversed and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.